_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

JUL 3 1 2015

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND

BY _____ DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| | * | |
| **v.** | * | Criminal No. PJM 15-00056 |
| | * | |
| **MICHAEL FLORIG** | * | |
| | * | |
| Defendant | * | |

### MEMORANDUM OPINION

Following a bench trial before Magistrate Judge Charles B. Day, Michael Florig has appealed his conviction of theft of government property not exceeding $1,000, in violation of 18 U.S.C. § 641. ECF No. 1. For the following reasons, the conviction is **AFFIRMED**.

### I.

The Court reviews the testimony offered at trial.

Florig worked as a quality assurance evaluator at the Defense Commissary Agency at Joint Base Andrews in Prince George's County, Maryland. His job included security, safety, supervision of the custodial staff, and stocking of the store at night when it was closed. His shift ran from 10:30 P.M. on April 15, 2014 to 7:00 A.M. on April 16, 2014. At approximately 6:50 A.M. on April 16, 2014, Herbert Ruffin, the store manager at the Commissary, arrived in the store's parking lot in response to a phone call he had received at 4:18 A.M., and found Florig sitting in his car. It was a cold morning, with temperatures in the 30s, and Florig's car was running.

Ruffin noticed cardboard boxes in the trunk of Florig's car, which he suspected may have been taken from the Commissary in violation of the Commissary's policy which required all empty boxes taken out of the store to be checked by a manager. Upon being questioned by

Ruffin, Florig admitted he had indeed taken some boxes from the Commissary which had not been checked by a manager. Florig then removed them from his car and allowed Ruffin to inspect them. Ruffin also asked Florig about two additional boxes in his car. According to Ruffin, Florig said that those boxes contained "some . . . additional stuff." ECF No. 6, at 18:25.

Ruffin could see that one of those boxes, which was open, contained items normally sold at the Commissary, including razors, Mucinex, and Crest 3D Whitestrips. According to Ruffin, Florig told him he had purchased these items, but did not indicate when or where. Florig removed those boxes from the car. Ruffin then turned to call the Joint Base Andrews Security Forces. At that point, according to Ruffin, Florig said: "Well, can you help me, you know, cut a deal?" *Id.* at 21:22-23. Ruffin said, "I will get you some help," and called the Security Forces. *Id.* at 21:23-25.

When the Security Forces arrived, including Captain Donald Masingo and Sergeant Brian Johnson, Ruffin briefed them on the situation. Officer Masingo then spoke with Florig, determined that further investigation was required, and moved the boxes to a conference room inside the Commissary. Both Officer Masingo and Sergeant Johnson took the items out of the boxes, including Women's Rogaine, Men's Rogaine, Mucinex, Crest 3D Whitestrips, Aquafresh White Trays, and Gillette disposable razors. Ruffin checked each type of item recovered from Florig's car with a hand-held scanner to determine whether the Commissary carried those items and determined that the Commissary did in fact carry and sell each type of item.

Officer Masingo verified that the items removed from the boxes were not in any way cold, which he stated seemed improbable if the items had been stored in a car for several hours in subfreezing weather. According to further testimony, while Sergeant Johnson remained in the conference room with the items, Ruffin and Officer Masingo went to check the store's security

cameras for the hours before Florig was found with the merchandise. Although the cameras were supposed to have been focused on the doors and other sensitive areas, they appeared to have been moved, because they were recording the ceilings and walls. Given his job title, Florig would have had access to the security cameras on April 16, 2014.

Following the observation as to the alignment of the security cameras, Officer Masingo and Sergeant Johnson requested that members of the Investigation Section of the Security Forces respond to the scene. Investigators Hayes and Comacho responded to the conference room, where the suspect items were laid out on the table. According to Investigator Hayes, he and Investigator Comacho listed each of the items on Air Force Form 52, the form for logging seized property.[1] Investigator Hayes, according to the testimony, never left the room during the logging of the items. The investigators then transported the items back to the Security Forces office and placed them in a locked evidence locker, where they remained until the morning of Florig's trial, at which point Investigator Hayes opened the locker, removed the items, and brought them to court.

Trial was held on December 8, 2014. The Government called store manager Ruffin, Officer Masingo, and Investigator Hayes as witnesses. At trial, Ruffin identified Government Exhibits 1 through 107 as the items he saw in Florig's car on April 16, 2014, including small boxes containing Women's Rogaine, Men's Rogaine, Mucinex, Crest 3D Whitestrips, Aquafresh White Trays, and razors. Investigator Hayes confirmed that the items in the courtroom appeared to be the same type of items inventoried on April 16, 2014, which had been listed on the Air Force Form 52. Officer Masingo also testified that Government Exhibits 1 through 107 were "consistent" with the things he saw in the parking lot on April 16, 2014. *Id.* at 98:1-17.

---

[1] Although the Government used this Air Force Form 52 on direct examination to refresh Investigator Hayes's recollection, the Magistrate Judge declined to allow the Government to introduce it into evidence because it was provided out of time. *Id.* at 159:23-160:19.

In his case, Florig called one of the stockers at the Commissary and his friend Nino Pangan as witnesses, and also testified on his own behalf. Florig testified that on April 16, 2014, he obtained three or four empty boxes from the Commissary because he was moving. He said that he met with Ruffin in the Commissary parking lot and explained that, with respect to the boxes in his car that contained items, those were personal items that he had purchased off base. Florig said he did not steal from the Commissary, but rather, that he had purchased the items from a street vendor at a flea market in Newark, New Jersey, while visiting his friend Pangan. Florig said that the vendor at the flea market wanted to sell all the items at once for $1,000, but Florig bargained the price down to $800. Florig testified that he paid cash for the items but did not get a receipt.

Florig's friend, Pangan, testified that Florig came to visit him in Jersey City, New Jersey on April 5, 2014. After Florig arrived at Pangan's home in the afternoon, they parted for a few hours, and when Florig returned to Pangan's home later that day, Pangan saw approximately twenty bags in the trunk of Florig's car, containing Crest Strips, Rogaine, and razors. The quantity of the items appeared to be such that they were not intended for personal use only. Pangan acknowledged that he saw boxes of Rogaine, but did not closely inspect the items, and that the boxes he saw were not made of brown cardboard, but rather, were boxes with the name Rogaine on the top. Pangan said that the boxes appeared to be boxes in bulk, similar to boxes that would be purchased from Walmart or Kmart.

The Government introduced no direct evidence that the property alleged to be stolen was the property of the United States. Nonetheless, on the basis of circumstantial evidence, Magistrate Judge Day found Florig guilty of theft of Government property, in violation of 18 U.S.C. § 641, and sentenced him to thirty days of imprisonment, and 12 months of supervised

release, including 50 hours of community service. ECF No. 18, *United States v. Florig*, 14-1533 (February 11, 2015). Two days later, Florig filed this appeal.

## II.

Florig challenges his conviction on two bases. First, he says, the Magistrate Judge "abused his discretion" in admitting into evidence the allegedly stolen items, Government Exhibits 1 through 107, because the chain of their custody was broken. Second, Florig argues that the evidence at trial was insufficient to prove that the items recovered from his car were Government property, so he could not be found guilty of theft of Government property.

## III.

Federal Rule of Criminal Procedure 58(g)(2)(D) provides that a district court reviewing a bench trial conducted by a magistrate judge should follow the standard of review employed by an appellate court assessing a district court conviction.

## IV.

On appeal to the district court, the Magistrate Judge's evidentiary rulings are reviewed under the abuse of discretion standard. *See Medford*, 661 F.3d at 751. A trial judge "'abuses [his] discretion when [he] acts arbitrarily or irrationally, fails to consider judicially recognized factors [in the] exercise of [his] discretion, relies on erroneous factual or legal premises, or commits an error of law.'" *United States v. Thompson-Riviere*, 561 F.3d 345, 348 (4th Cir. 2009) (quoting *United States v. Delfino*, 510 F.3d 468, 470 (4th Cir. 2007)). The evidence is evaluated "'in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect.'" *United States v. Simpson*, 910 F.2d 154, 157 (4th Cir. 1990) (quoting *Mullen v. Princess Anne Volunteer Fire Co., Inc.*, 853 F.2d 1130, 1135 (4th Cir. 1988)).

When analyzing an evidentiary ruling with respect to chain of custody, "the ultimate

question is whether the authentication testimony was sufficiently complete so as to convince the court that it is improbable that the original item had been exchanged with another or otherwise tampered with." *United States v. Howard-Arias*, 679 F.2d 363, 366 (4th Cir. 1982) (citing *United States v. Brewer*, 630 F.2d 795 (10th Cir. 1980)). For example, in *United States v. Reynolds*, the Fourth Circuit found that the district judge did not abuse his discretion in finding the chain of custody unbroken, where the evidence had been retrieved and placed back in the vault, the chain of custody was properly documented, the evidence had not been tampered with, and the evidence appeared substantially the same as when it was seized from the defendant. 2001 WL 288656, at *66 (4th Cir. March 26, 2001).

Florig argues that the chain of custody was broken here by reason of the absence of tags, marks, and a property log. Furthermore, he says, the items recovered from his car were of a "fungible" nature that could be purchased in any pharmacy or grocery store. Without any property logs or evidence tags, he submits, there is no way to be certain that the items the Government sought to introduce into evidence were the same as those recovered from his car on April 16, 2014.

The Government argues that production of property logs or evidence tags is not required when sufficient chain of custody testimony establishes the authenticity of the evidence. Florig, says the Government, diverts attention from the testimony of the officers who arrived on the scene, drew up the inventory, and maintained custody of the property after it was recovered. Moreover, according to the Government, the totality of the evidence shows that the items introduced at trial were the same items that Florig took from the Commissary and placed into his car.

The Court agrees with the Government that the Magistrate Judge did not abuse his

6

discretion in finding an appropriate chain of custody. Although the Government did not

introduce any property logs into evidence or individually tag each item seized from Florig's car,

it did offer testimony from the officers who arrived on the scene, drew up an inventory of the

items, and maintained custody of them at all times after they were recovered from Florig's car on

April 16, 2014.[2] Additionally, the testimony of the Government witnesses—Ruffin, Officer

Masingo, and Investigator Hayes—indicates that Government Exhibits 1 through 107 were the

same items recovered from Florig's car on April 16, 2014. ECF No. 6, at 23:17-24:6 (Ruffin); *Id.*

at 103:20-110:7 (Officer Masingo); *Id.* at 145:4-7 (Investigator Hayes).

    "The authentication testimony was sufficiently complete so as to convince the [C]ourt

that it is improbable that the original item had been exchanged with another or otherwise

tampered with." *Howard-Arias*, 679 F.2d at 366 (citing *Brewer*, 630 F.2d 795).

## V.

    *United States v. Kelly* establishes the standard for the review of sufficiency of evidence

challenges:

> We review challenges to the sufficiency of evidence *de novo*. In doing so, our role
> is limited to considering whether there is substantial evidence, taking the view
> most favorable to the Government, to support" the conviction. In determining
> whether [the evidence] is substantial, we ask whether "a reasonable finder of fact
> could accept as adequate and sufficient to support a conclusion of a defendant's
> guilt beyond a reasonable doubt." Importantly, we do not weigh the evidence or
> assess the credibility of witnesses, but assume that the [finder of fact] resolved
> any discrepancies in favor of the [G]overnment.

510 F.3d 433, 440 (4th Cir. 2007) (first alteration in original) (citations omitted).

---

[2] Officer Masingo admitted that he and Ruffin left the conference room containing the boxes in order to check on the surveillance camera footage. His partner, Sergeant Johnson, remained in the conference room with the boxes. ECF No. 6, at 102:17-18. Sergeant Johnson, however, did not testify at trial. But "the fact of a 'missing link does not prevent the admission of real evidence, so long as there is sufficient proof that the evidence is what it purports to be and has not been altered in any material aspect.'" *Howard-Arias*, 679 F.2d at 366 (citation omitted). Here, in light of Officer Masingo's uncontradicted testimony that Sergeant Johnson remained in the conference room, the Government's failure to call Sergeant Johnson to testify did not render the Magistrate Judge's decision to admit the testimony about Sergeant Johnson remaining in the conference room an abuse of discretion.

Nor is it necessary, to survive a sufficiency challenge, [that] the prosecution's circumstantial evidence "exclude[s] every reasonable hypothesis other than that of guilt." *Holland v. United States*, 348 U.S. 121, 139 (1954). Thus, when a defendant challenges a conviction based on the sufficiency of the evidence, the defendant bears "a heavy burden." *United States v. Hoyte*, 51 F.3d 1239, 1245 (4th Cir. 1995).

Florig argues that the Government failed to demonstrate that the property recovered from Florig's car was the property of the United States, citing the Government's failure to introduce any property logs or Commissary inventory documents showing that inventory was missing from the store or that the Commissary was the owner of the property. It is unquestionably true that the boxes introduced into evidence did not have labeling, price tags, UPC codes, or serial numbers that link them to the Commissary. And while the Government witnesses identified the contraband by reference to UPC codes, those codes only identified the items in general (*i.e.*, the codes would identify Rogaine as Rogaine, but not as the Commissary's Rogaine). In addition, the items recovered from Florig's car were without a doubt "fungible" items that could be purchased in almost any pharmacy or grocery store. No witness identified the alleged contraband as the very same items that were on the shelves or floor of the Commissary.

The Government concedes that evidence of United States ownership of the contraband in Florig's case is circumstantial. It argues, however, that, taken in the light most favorable to the prosecution, the evidence, while circumstantial, provides adequate and sufficient support to the conclusion that the contraband was stolen from the Commissary, and not purchased for $800 cash from a flea market in New Jersey. The Court agrees.

Florig had access to the store inventory during the nighttime and was found in possession of merchandise identical to that sold by the Commissary in packages consistent with wholesale

delivery, rather than with retail sale. Florig was the only person who had access to the security cameras during his shift, and those cameras had apparently been tampered with during his shift, such that they were not focused on the doors and sensitive areas, but rather, were recording the ceilings and walls.

Further, Officer Masingo testified that it was apparent that the items had not been in Florig's car for a very long time because the items in the boxes were not cold at all, whereas items that had been stored in a car for several hours in subfreezing weather would presumably have been cold. Most persuasive, when Florig was confronted by Ruffin, the store manager, who shortly after turned to make a call to the Security Forces, Florig asked him, "Well, can you help me, you know, cut a deal?" ECF No. 6, at 21:23-25. Such a statement is hardly consonant with someone who believes he is totally innocent of theft. As Magistrate Judge Day pointed out, Florig never denied making this statement to Ruffin. *Id.* at 226:14-17.

Basing a conviction solely upon circumstantial evidence is, of course, permissible. *See United States v. Taylor*, 482 F.2d 1376, 1377 (4th Cir. 1973). On balance, the Court concludes that Florig has not met the "heavy burden" required to secure reversal of the trial court's determinations. *See Hoyte*, 51 F.3d at 1245. Given the totality of the evidence presented to the Magistrate Judge, a rational trier of fact could have found Florig guilty of theft beyond a reasonable doubt. *See United States v. Dodson*, 30 F. App'x 239, 239 (4th Cir. 2002).

**VI.**

For the foregoing reasons, Florig's Appeal (ECF No. 1) is **DENIED** and the Conviction and Sentence are **AFFIRMED**.

9

A separate Order will **ISSUE**.

/s/
_____

**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**July __, 2015**

10